

The following constitutes
the order of the court. Signed September 17, 2013

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                                          Case No. 11-70312 MEH
EDMUND STANISLAW SKIERS AND                                    Chapter 7
BOZENA TERESA SKIERS,
                Debtors/

JOSEPH LETTIERE AND,                                           Adv. No. 11-04358 AH
THERESA LETTIERE
                Plaintiffs
v.

EDMUND STANISLAW SKIERS AND
BOZENA TERESA SKIERS,
                Defendants/

DECISION AFTER TRIAL

     A trial on dischargeability was held on September 10, 2013, and the court took the matter under submission. This decision after trial constitutes the court's findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 7052.

     Plaintiffs, Mr. and Mrs. Lettiere, seek a determination that the debt owed to them by Debtors, Mr. and Mrs. Skiers, should be exempt from discharged pursuant to Bankruptcy Code[1] § 523(a)(2)(A). This provision

___
[1] 11 U.S.C. §§ 101, *et. seq.* ("Bankruptcy Code").

1

exempts a debt from discharge on the basis that it was obtained by false pretenses, a false representation or actual fraud – referred to as "fraud in the inception."

Analysis of nondischargeability on this basis focuses on whether there were misrepresentations prior to advancement of funds creating the unpaid claim. As the loan involved a one-time transfer from the Lettieres to the Skiers, evidence of events after the transfer may go to the amount of the debt, or the credibility of the witness or their character, but any fraud that may have occurred after the funds were loaned cannot form the basis for nondischargeability under § 523(a)(2)(A).

Plaintiff must demonstrate by a preponderance of the evidence that the claim should be exempt from discharge. The five elements are:

> "(1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made."

*American Express Travel Related Servs. Co. v. Hashemi* (*In re Hashemi*), 104 F.3d 1122, 1125 (9th Cir. 1996); *Citibank (South Dakota), N.A. v. Eashai* (*In re Eashai*), 87 F.3d 1082, 1086 (9th Cir. 1996).

The parties agree that in February 2008, the Lettieres loaned $150,000 to the Skiers. The Skiers signed a note providing for repayment of the funds by June 21, 2008. The loan was secured by a Short Form Deed of Trust and Assignment of Rents for a rental property owned by the Skiers on Cleopatra Avenue in Pleasant Hill. Approximately six months after the loan became due; the Skiers began making payments on the loan. They repaid approximately $90,000 of the loan prior to their bankruptcy.

At trial, two versions of the representations made prior to the loan were presented. The Lettieres testified that Mr. Skiers asked to borrow $150,000 in order to buy out his then business partner. Mr. Skiers testified that he never requested the loan, but that instead Mr. Lettiere offered to loan him $150,000 for any purpose he needed based on Mr. Lettiere's knowledge of Mr. Skiers financial situation.

2

Case: 11-04358    Doc# 41    Filed: 09/17/13    Entered: 09/18/13 17:24:56    Page 2 of 5

The court does not find Mr. Skiers testimony that Mr. Lettiere volunteered to loan him money without any request on his part credible. Mr. Skiers did not provide a convincing position as to why Mr. Lettiere would offer him a large loan, with a short repayment period unsolicited. Further, if the loan was for payment of his real estate or credit card debts, no evidence was presented that funds were used or needed for this purpose during the short loan term.

On the other hand, the court found the testimony of Mr. and Mrs. Lettiere convincing that Mr. Skiers requested a loan of $150,000 to buy out his partner's share of their automotive repair business. The Lettieres testified that Mr. Skiers had complained for some time about his business partner, and had concerns that his partner was improperly handling the business financial records. In addition, the former business partner, Carlos Showing, testified that Mr. Skiers informed him in September or October 2007 that he wanted to end the partnership and buy out his interest in the partnership. Mr. Skier's testimony regarding the timing of negotiations with Mr. Showing is consistent.

Ultimately, the partner bought out Mr. Skier's interest in the business. This focuses the analysis on whether Mr. Skier's knew that the representation made –that he was borrowing money to buy out his business partner-- was false when he made it in early 2008. And whether it was made with the intention and purpose of deceiving the Lettieres.

The testimony of Mr. Showing was that in September or October 2007, Mr. Skiers approached him regarding ending the partnership and purchasing his interest. Their negotiations then continued for approximately one year. The issues that went back and forth in negotiations were which party would buy out the other and the purchase price. By February 2008, it was not determined who was going to buy out whom, in part because Mr. Skiers kept changing his mind. The court found Mr. Showing's testimony on this point convincing.

The fact that negotiations regarding the buyout remained in flux at the time the loan was made is consistent with the allegations in the Complaint initiating this adversary proceeding. In the complaint, the Lettieres alleged that before the loan was finalized, the Skiers informed them that his partner had instead

3

bought him out. Although the sale of the auto body shop had not been finalized at the time the loan was made, this is consistent with the terms of the partnership buy-out being in flux.

The evidence establishes that at the time the loan was requested it had not been fully determined whether Mr. Skiers would buy out his partner or not. Thus, he could not have known that his representation regarding the sale was false. As the testimony also provides that Mr. Skiers began the negotiations by seeking to buy out his partner, the evidence did not establish that Mr. Skiers made the representation with the intention and purpose of deceiving the Lettieres. In sum, the loan was made based on a representation early in the negotiations between the partners, and it was not clearly and knowingly wrong at the time it was made. The Skiers repayment of the majority of the loan, even late, further supports a determination that Mr. Skiers' did not knowingly misrepresent the purpose of the loan in order to deceive the Lettieres.

In so holding, the court notes that Mr. Skiers testimony is at points contrary to my findings, and therefore, against his interests under this analysis. But Mr. Skiers testimony was in his interests under his theory of the case, and generally, not credible as he had little recollection regarding significant events --such as why the Lettieres would loan the money, the creation or execution of the Note, and his use of the majority of the loan proceeds.

Based on these findings and conclusions, the court finds that the Lettieres did not establish the elements necessary to find that the debt owed to them should be exempt from discharge. Accordingly, the court will issue judgment for the Skiers.

**END OF DECISION**

4

COURT SERVICE LIST

William Denkers
Law Offices of William Denkers
456 San Mateo Ave. #2
San Bruno, CA 94066